UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 17-01411 JGB (KKx) | Date | March 19, 2018 |
| Title | *James Rutherford v. Hellas, Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) GRANTING Plaintiff's Application for Default Judgment Against Hellas, Inc., John Tsiolis, and Patricia Tsiolis (Dkt. No. 13); and (2) AWARDING $4,341.50 in Attorney's Fees and Costs (IN CHAMBERS)**

Before the Court is Plaintiff James Rutherford's ("Plaintiff") Application for Default Judgment against Hellas, Inc., a Montana corporation d/b/a John's Place; John Tsiolis; and Patricia Tsiolis (collectively, "Defendants"). ("Application," Dkt. No. 13.) After consideration of the papers filed in support of the Application, the Court GRANTS the Application and directs the Clerk to enter judgment in favor of Plaintiff.

## I.  BACKGROUND

Plaintiff filed a complaint on July 13, 2017 against Defendants and Does 1 through 10. ("Complaint," Dkt. No. 1.) The Complaint alleges two claims: (1) violations of the Americans With Disabilities Act of 1990 ("ADA"); and (2) violations of the Unruh Civil Rights Act ("UCRA"). (Id.) Plaintiff seeks damages and injunctive relief. (Id.) The facts alleged in the Complaint are as follows.

Plaintiff suffers from spinal stenosis aggravated by a herniated disc. (Id. ¶ 2.) He also suffers from an arthritic condition in his thumbs, which interferes with his ability to grab, twist, and turn objects. (Id.) In March 2015 and again in May 2017, Plaintiff visited John's Place on his way to Joshua Tree National Park. (Id. ¶ 10.) However, Plaintiff encountered barriers to access at the doors, service counters, and bathroom facilities. (Id.) Plaintiff alleges the following barriers:

an entrance door handle that requires tight grasping or twisting of the wrist (section 404.2.7 and 309.4); an entrance door closer not adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is five (5) seconds minimum (section 404.2.8.1); height of the sales counter is in excess of 36 inches (section 904.4.1); the checkout aisles, sales counters, service counters, food service lines, queues, and waiting lines fail to comply with section 227; the grab bar at the rear of the water closet is shorter than the minimum 36 inches required (section 604.5); the centerline of the water closet is approximately 15 inches away from the nearest wall (section 604.2); the flush controls are not located on the open side of the water closet (section 604.6); clearances around the water closet are less than the 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall (section 604.3.1); no clear floor space at the interior of the restroom doorway at least 18 inches clearance on the latch side of the door (table and figure at 404.2.4.1); no turning space complying with section 304 exists at the lavatory or water closet; the bottom edge of the sink mirror exceeds 40 inches in height (section 603.3); and the height of the bottom lip of the urinal is approximately 24 inches which is in excess of the 17 inches allowed (section 605.2).

(Id. ¶ 14.)  Plaintiff also alleges that "Defendants had no policy or plan in place to make sure that the parking spaces with required signage and an accessible path to the accessible entrance of the business were available to persons with disabilities."  (Id. ¶ 17.)

Defendants were properly served with a copy of the Summons and Complaint on July 27, 2017 by personal service.  (Dkts. No. 8, 9.)  Defendants failed to answer the complaint within 21 days after service and the Court issued an order to show cause ("OSC") for lack of prosecution.  (Dkt. No. 10.)  In response, Plaintiff filed a request for default judgment on September 14, 2017.  (Dkt. No. 11.)  The Clerk of this Court entered default against Defendants on September 15, 2017.  (Dkt. No. 12.)

On February 16, 2018, Plaintiff filed this Application, requesting $4,000 in damages and $4,775 in attorney fees and costs.  (Application.)  He also filed a memorandum in support of his Application ("Memorandum," Dkt. No. 13-1); a declaration of attorney Joseph R. Manning, Jr. ("Manning Decl.," Dkt. No. 13-3); a declaration of James Rutherford ("Rutherford Decl.," Dkt. No. 13-4); photographs (Dkt. Nos. 13-5, 13-6); and public records (Dkt. No. 13-7).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides for entry of default judgment by the Court.  Pursuant to Local Rule 55-1, an application to the Court for default judgment must be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and include the following:

(a) When and against what party the default was entered;
(b) The identification of the pleading to which default was entered;
(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and
(e) That notice has been served on the defaulting party, if required by F.R.C.P 55(b)(2).

L.R. 55-1; see also Fed. R. Civ. P. 55(b)(2) (setting forth similar requirements for an application to the court for default judgment).

Whether to enter a default judgment is within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). A plaintiff is required to provide evidence of his damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III.  DISCUSSION

Plaintiff moves this Court to enter default judgment against Defendants on both of his claims. In order to enter default judgment in his favor, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in his favor. The Court evaluates these factors below.

**A. Procedural Requirements**

Plaintiff has satisfied the procedural requirements for entry of default judgment by the Court. Pursuant to Federal Rule of Civil Procedure 55, Plaintiff did not petition for entry of default judgment until after default was entered against Defendants by the Clerk. (Dkt. No. 12.)

The Court notes that Plaintiff does not attach any declaration in compliance with the Local Rules of this Court. See L.R. 55-1. In his Application, however, Plaintiff: (1) states default was entered against Defendants Hellas, Inc., John Tsiolis, and Patricia Tsiolis on September 15, 2017 (Application at 1-2); (2) identifies the Complaint as the pleading to which default was entered (Id. at 2); (3) claims the defaulting party is not an infant or incompetent person (Id.); (4) states the default party is not "in military service or otherwise exempted under the Solider and Sailor's relief Act of 1940"[1] (Id.); and (5) asserts that notice of the Application has been served on the defaulting party (Id.).

B.   Eitel Factors

1.   Possibility of Prejudice to Plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgement. Because Defendants have not appeared in this action, a default judgment is the only means by which Plaintiff may recover. Absent a default judgment by this Court, Defendants will have avoided liability simply by not responding to Plaintiff's action. Therefore, this factor weighs in favor of default judgment. Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

2.   Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third Eitel factors concern the merits of Plaintiff's substantive claims, and the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted). Here, Plaintiff asserts two claims—violations of the ADA and the UCRA— and seeks default judgment on both.

To prevail on its first claim for violation of the ADA, Plaintiff must prove the following: "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010). Additionally, since only injunctive relief is available under Title III, a plaintiff must show that the removal of architectural barriers is "readily achievable" by the covered entity. Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 879–80 (9th Cir. 2004) (citing to 42 U.S.C. § 12181(9)(D)); see also Moore v. Cisneros, No. 1:12-CV-00188-LJO, 2012 WL 6523017, at *2 (E.D. Cal. Dec. 13, 2012) ("To succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's

---

[1] Plaintiff is presumably asserting that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply. See L.R. 55-1(d).

place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable") (internal marks and citations omitted).  Pursuant to § 51(f), to prevail on his second claim, Plaintiff need only establish a violation of the ADA because a plaintiff who establishes a violation of the ADA also establishes a violation of the UCRA.  Cal. Civ. Code § 51(f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 666 (2009) ("A plaintiff who establishes a violation of the ADA, therefore, need not prove intentional discrimination in order to obtain damages under [the UCRA].")

      Here, the Complaint properly alleges the elements of the claims on which Plaintiff seeks judgment.  The Complaint asserts that Plaintiff is a disabled man who suffered from a "qualified disability" under the ADA. (Compl. ¶ 1.)  The Complaint further asserts that John's Place is a business establishment and place of public accommodation owned by John Tsiolis and Patricia Tsiolis. (Id. ¶¶ 2-5, 11.)  Moreover, Plaintiff asserts that he was denied accommodations as detailed above. (Id. ¶¶ 12-21.)  Finally, he asserts that Defendants have the means and ability to remedy the violations. (Id. ¶ 22.)

      Plaintiff has adequately pleaded his claims for violations of the ADA and UCRA against Defendants.  Because default has already been entered in this case, the Court must accept all well-pleaded allegations of the Complaint as true.  See TeleVideo, 826 F.2d at 917 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true.")  Accordingly, the second and third factors also weigh in favor of default judgment.

### 3. Sum of Money at Stake in the Action

      Plaintiff seeks a total monetary judgement of $8,775.00 against Defendants: $4,000.00 in damages pursuant to the UCRA and $4,775.00 in attorney's fees and costs under the ADA and UCRA.  In evaluating this factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, 238 F. Supp. 2d at 1176 (C.D. Cal. 2002).

      Here, Defendants violated Plaintiff's civil rights because they failed to provide accessible accommodations at John's Place.  It appears Defendants will continue to do so given their deliberate failure to respond or otherwise defend against Plaintiff's claims.  Given that the statutory damages Plaintiff seeks are equivalent to the minimum penalty for this violation, and the attorney's fees and costs represent the amount he has incurred in prosecuting this suit, the sum of money sought is not necessarily inappropriate.  Therefore, the Court deems the fourth factor weighs in favor of default judgment.

### 4. Possibility of dispute concerning material facts

      Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages.  TeleVideo, 826 F.2d at 917.  Because Defendants have not appeared in this action or asserted any defenses, there is no possibility of a dispute concerning material facts at this time.  Accordingly, this factor favors default judgment.

### 5. Whether Default Was Due to Excusable Neglect

Under the sixth factor, the Court must consider whether failure to answer a plaintiff's claims is due to excusable neglect. Eitel, 782 F.2d at 1472. In the instant case, Defendants were properly served with the Summons and Complaint on July 27, 2017. (Dkt. Nos. 8, 9.) Thus, Defendants' failure to challenge this action appears to have been by choice, given that they were properly served.

### 6. Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, in this case, Defendants' failure to answer or otherwise challenge this action makes a decision on the merits impracticable, if not impossible. Because Plaintiff has sufficiently pleaded facts supporting his claims, the policy favoring decisions of cases on their merits does not warrant denying default judgment in this instance. In sum, an analysis of the Eitel factors support granting of default judgment on Plaintiff's first and second causes of action. Accordingly, the Court GRANTS Plaintiff's Motion.

## C. Requested Relief

Having determined that Plaintiff's Application should be granted, the Court now turns to Plaintiff's requested relief.

### 1. Injunctive Relief

The Complaint seeks injunctive relief compelling defendants to comply with the ADA and the UCRA. (See Compl.) Because the factual allegations of the Complaint are taken as true, Plaintiff is entitled to the injunctive relief he seeks. See Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III.")

### 2. Statutory Damages

Plaintiff seeks statutory damages available under the UCRA. The UCRA provides for minimum statutory damages of $4,000.00 per violation. Cal. Civ. Code § 52(a). Because a violation of the ADA constitutes a violation of the UCRA, Plaintiff contends he is entitled to statutory damages of $4,000.00. (Application at 2.) As described above, Plaintiff has alleged facts sufficient to allege a violation of the ADA, and thus the UCRA. Accordingly, Plaintiff is entitled to $4,000.00 in statutory damages under the UCRA.

3. **Attorney's Fees and Costs**

Pursuant to 42 U.S.C. § 12205, the prevailing party in an action brought under the ADA may, at the Court's discretion, recover reasonable attorney's fees and costs. 42 U.S.C. § 12205 ("[T]he court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs.")[2] Under Local Rule 55-3, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorney's fees, those shall be calculated according to" an established schedule. L.R. 55-3. A court must apply the schedule, exclusive to costs. Id. In the event an attorney claims a fee in excess of the schedule, the attorney shall file a written request to have her fees fixed by the court, and the court must render judgment for such fees it deems reasonable. Id.

Plaintiff's counsel requests that the Court affix his fees with the Application. (Application at 13.) He contends it is inappropriate to use the default fee schedule of Local Rule 55 for two reasons: first, because a reasonable attorney fee award cannot be calculated in a Title III ADA case due to the fact that the cause of action is equitable and there is no judgment by which to determine a fee award; second, because the proportionality between the damage recovery and fee award contravenes the Supreme Court's edict that fees in civil rights cases should encourage representation of meritorious cases, no matter the damage award. (Id. at 14)

Generally, in an action under the ADA the prevailing party should recover attorney's fees and costs unless special circumstances render the award unjust. Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (citations omitted). "In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel . . . and avoid a windfall by counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). In this circuit, attorney's fees are calculated using the lodestar method. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 119 (9th Cir. 2000.) Thus, the Court agrees with Plaintiff that the default fee schedule of the Local Rules is generally ill suited for fee awards in ADA actions and will utilize the lodestar method.

Here, Plaintiff seeks an award of $4,775.00 for attorney's fees and costs: $4,335.00 for 10.2 hours worked, and $440.00 in filing and service fees. (Manning Decl. ¶ 4.) The first step in determining the appropriate fee award requires calculating the "lodestar figure." Hensley, 461 U.S. at 433. Calculating the "lodestar figure" requires the number of hours reasonably expended on the litigation and a reasonable hourly rate.

As to hours spent on the litigation, Mr. Manning represents he spent 10.2 hours of time preparing this case. (Manning Decl. ¶ 4.) Specifically, he states he completed the following:

---

[2] In contrast, California Civil Code § 55 requires an award of reasonable attorney's fees for the prevailing party. Cal. Civ. Code § 55. Thus, the question before the Court is not whether Plaintiff will receive an award of attorney's fees and costs, but how much.

>   (1) discussed the case with the client and developed the intake notes;
>   (2) conducted a preliminary site inspection of the real property to comply with Rule 11 obligations;
>   (3) conducted research of public records to determine the identities of the business owner and owner of the real property;
>   (4) drafted the Complaint;
>   (5) reviewed and executed the Request for Entry of Default; and
>   (6) drafted the application for default judgment, including the supporting declaration.

(Id.)  However, he does not provide the Court with a breakdown of the time spent on each individual task.  As a result, the Court cannot specifically determine whether the time spent on each task is reasonable.  In any case, the Court finds the number of hours billed in this case to be slightly excessive.

Mr. Manning is an experienced practitioner.  He has been in practice for 15 years.  (Manning Decl. ¶ 5.) See, e.g., Acosta v. Hasan, No. 1:16-cv-01691-DAD-SKO, 2017 WL 1075490, at *6 (E.D. Cal. Mar. 21, 2017) (denying award of $2,514.00 in default judgment action in ADA case as unreasonable because of attorney's experience and the nature of the action).  Given the nature of this case and Mr. Manning's experience, 10.2 hours seems to be a slight overestimation of the work that Mr. Manning performed in this litigation.  The Court thus utilizes its discretion to determine the hours reasonably spent in litigation and concludes that reducing the number of hours by ten percent is appropriate.  Van Gerwin, 214 F.3d at 1045 ("A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'")  Thus, the time spent for purposes of calculating the lodestar figure is 9.18.

As to the hourly rate to be charged, the Court calculates these rates according to prevailing market rates in the relevant legal community.  Blum v. Stenson, 465 U.S. 886, 895 n.11.  "The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate 'with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Acosta, 2017 WL 1075490, at *7 (quoting Blum, 465 U.S. at 895 n.11.)  Mr. Manning states that his hourly billing rate for ADA related work is $425.00, "a fair rate for attorneys with similar experience and expertise in this nuanced area of law."  (Manning Decl. ¶ 5.)  The Court applies this hourly rate in calculating the lodestar figure.  Here, the hours reasonably spent in litigation (9.18 hours) multiplied by the reasonable hourly rate for Mr. Manning ($425.00) results in a "lodestar figure" of $3,901.50.  Accordingly, the Court GRANTS the Request to Affix Attorney's Fees and awards $3,901.50 in fees.

With regard to costs, Plaintiff seeks to recover $440.00 in filing fees and service costs.  Because litigation expenses and costs are compensable under the ADA and the UCRA, the Court awards Plaintiff the costs requested.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Application is GRANTED.

Judgement shall be entered as follows:

1. As to Plaintiff's first claim, Defendants are ORDERED to provide an accessible restaurant, including but not limited to doors, counters, aisles, queues, and restroom facilities.

2. As to Plaintiff's second claim, Plaintiff is AWARDED statutory damages under the UCRA in the amount of $4,000.00.

3. Plaintiff is AWARDED reasonable attorney's fees in the amount of $3,901.50 and costs in the amount of $440.00 under the ADA.

4. Plaintiff is ORDERED to mail a copy of this order and the judgment concurrently filed therewith to Defendants. Plaintiff shall file Proof of Service with the Court within ten days of the date of this order.

**IT IS SO ORDERED.**